# No. 19-16710

In the

# United States Court of Appeals for the Ninth Circuit

———————

THERMOLIFE INTERNATIONAL, LLC,

*Plaintiff–Appellant*,

v.

NETNUTRI.COM LLC,

*Defendant–Appellee*.

———————

On Appeal of Right from the U.S. District Court for the District of Arizona, Hon. John J. Tuchi, Case No. 2:18-cv-04248

———————

## RESPONSE BRIEF OF APPELLEE NETNUTRI.COM LLC

———————

Robert F. Parsley
Michael J. Dumitru
Meredith C. Lee
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Telephone: (423) 756-6600
bob.parsley@millermartin.com
michael.dumitru@millermartin.com
meredith.lee@millermartin.com

Anthony J. Hancock
BEAUGUREAU, HANCOCK, STOLL
& SCHWARTZ, P.C.
302 E. Coronado Rd.
Phoenix, AZ 85004
Telephone: (602) 977-7742
ahancock@bhsslaw.com

*Counsel for Defendant–Appellee NetNutri.com LLC*

Dated: January 30, 2020

## CORPORATE DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1, Defendant–Appellee NetNutri.com LLC states that it may properly be identified as Nutricento International, Inc., which is privately held. There is no parent corporation, and no publicly held corporation owns 10% or more of the stock.

s/ Robert F. Parsley

MILLER & MARTIN PLLC

*Counsel for Defendant–Appellee*
*NetNutri.com LLC*

i

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. i

Table of Authorities ................................................................................... v

Jurisdictional Statement ............................................................................ 1

Statement of the Issues ............................................................................. 2

Statement of the Case ............................................................................... 4

    I.    Statement of Facts .......................................................... 4

        A.    ThermoLife, an Arizona Company, Sells Raw
              Ingredients for Use in Dietary Supplements ...................... 4

        B.    NetNutri, a New Jersey Company, Advertises
              Dietary Supplements for Sale Online ................................ 5

        C.    ThermoLife Alleges That NetNutri Unfairly
              Competes with ThermoLife in Arizona by Offering
              Adulterated Supplements for Sale Online .......................... 5

    II.    Procedural History ........................................................ 8

        A.    ThermoLife Sued NetNutri for Unfair Competition,
              and NetNutri Moved to Dismiss ....................................... 8

        B.    Rulings Presented for Review .......................................... 9

             1.    The District Court Dismissed This Action for the
                  Lack of Personal Jurisdiction over NetNutri ............. 9

             2.    The District Court Denied ThermoLife's Motions
                  for Reconsideration ................................................. 11

Summary of Argument ............................................................................. 12

Argument ................................................................................................ 15

    I.    Standards of Appellate Review ........................................ 15

    II.    The District Court Properly Dismissed the Complaint for
        the Lack of Personal Jurisdiction over NetNutri ................. 16

A. By Standing on Its Complaint, ThermoLife Failed to Meet Its Evidentiary Burden for Specific Personal Jurisdiction ........................................................................ 17

B. By Not Submitting Evidence to Support Disputed Allegations, ThermoLife Failed to Meet Its Evidentiary Burden for Specific Personal Jurisdiction ........................................................................ 25

C. Even If ThermoLife Did Not Have to Submit Evidence Outside Its Complaint, It Failed to Make a Prima-Facie Case for Specific Personal Jurisdiction ........ 28

    1. Federal Due Process Is the Sole Inquiry ................... 28

    2. ThermoLife Fails to Make a Prima-Facie Showing of Purposeful Direction or Causation ......... 29

D. ThermoLife Fails to Make a Prima-Facie Case for General Personal Jurisdiction ............................................ 43

III. Even if NetNutri Were Subject to Personal Jurisdiction, the Court Should Affirm Because ThermoLife Fails to State a Claim for Relief ............................................................. 44

A. ThermoLife Lacks Article III Standing to Pursue Any of Its Claims .................................................................... 44

    1. ThermoLife Fails to Allege Any Injury in Fact ......... 45

    2. Even If ThermoLife Had Alleged an Actual Injury, It Could Not Fairly Be Traced to NetNutri .................................................................... 52

    3. Even if ThermoLife Had Alleged Actual Injury, It Could Not Be Redressed by a Favorable Judicial Decision .................................................... 54

B. Even if ThermoLife Alleged an Injury Sufficient to Support Article III Standing, It Does Not State a Claim Under the Lanham Act .......................................... 55

    1. ThermoLife's Claims Are Not within the "Zone of Interests" Protected by the Lanham Act ............... 56

2. ThermoLife Has Failed to Allege Any Injury Proximately Caused by NetNutri's Conduct ............. 61

C. ThermoLife's Failure to State a Lanham Act Claim Negates its Common-Law Claims ...................................... 64

D. The Complaint Fails to Satisfy Federal Rule of Civil Procedure 9(b) ................................................................... 65

Conclusion .................................................................................................. 68

Statement of Related Cases

Statement of Compliance

Certificate of Service

iv

# TABLE OF AUTHORITIES

## Cases

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
  94 F.3d 586 (9th Cir. 1996) ..................................................... 21

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
  551 F.2d 784 (9th Cir. 1977) .............................. 18, 19, 20, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................... 49, 59

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) .............................. 29, 30, 33, 34

*Baker v. Stewart Title & Trust of Phoenix, Inc.*,
  5 P.3d 249 (Ariz. Ct. App. 2000) .......................................... 65

*Barantsevich v. VTB Bank*,
  954 F. Supp. 2d 972 (C.D. Cal. 2013) ...................... 20, 21, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................... 58, 60

*Bobbleheads.com, LLC v. Wright Brothers, Inc.*,
  259 F. Supp. 3d 1087 (S.D. Cal. 2017) .......................... 62, 65

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .................................. 24, 31, 41

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ................................................... 41, 43

*Bubble Genius LLC v. Smith*,
  No. CV 15-0066 PA (FFMX), 2015 WL 4399483 (C.D. Cal. July 17, 2015) .......................................................... 42

*Calder v. Jones,*
   465 U.S. 783 (1984) .................................................................. 29, 30, 34

*Carrier Corp. v. Outokumpu Oyj,*
   673 F.3d 430 (6th Cir. 2012) .................................................. 23

*Cernansky v. Lefebvre,*
   88 F. Supp. 3d 299 (D. Vt. 2015) ........................................... 40

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.,*
   159 F.3d 412 (9th Cir. 1998) ......................................... 15, 27, 44

*Cleary v. News Corp.,*
   30 F.3d 1255 (9th Cir. 1994) ................................................... 64

*Clinton v. City of New York,*
   524 U.S. 417 (1998) ........................................................... 52, 54

*Clorox Co. v. Reckitt Benckiser Grp. PLC,*
   398 F. Supp. 3d 623 (N.D. Cal. 2019) .................................... 51

*Crane v. N.Y. Zoological Soc.,*
   894 F.2d 454 (D.C. Cir. 1990) ................................................ 24

*Cybersell, Inc. v. Cybersell, Inc.,*
   130 F.3d 414 (9th Cir. 1997) ............................................ 38, 40

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.,*
   702 F.3d 472 (8th Cir. 2012) .................................................. 23

*Dayhoff Inc. v. H.J. Heinz Co.,*
   86 F.3d 1287 (3d Cir. 1996) .................................................... 23

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC,*
   --- F.3d ---, No. 18-6107, 2020 WL 119961 (10th Cir. Jan. 9, 2020) .... 23

*DFSB Kollective Co. v. Bourne,*
   897 F. Supp. 2d 871 (N.D. Cal. 2012) .................................... 41

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ............................................................. 21

*Federal Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ............................................................................ 52

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
  905 F.3d 597 (9th Cir. 2018) ............................................................. 15

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ........................................................... 43

*Hernandez v. Spacelabs Med. Inc.*,
  343 F.3d 1107 (9th Cir. 2003) ........................................................... 35

*Hillis v. Heineman*,
  2009 WL 2222709 (D. Ariz. July 23, 2009) ...................................... 65

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ....................................................... 36, 37

*Illinois v. Hemi Grp. LLC*,
  622 F.3d 754 (7th Cir. 2010) ............................................................. 41

*In re Boon Glob. Ltd.*,
  923 F.3d 643 (9th Cir. 2019) .............................................. 16, 18, 22, 32

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) ............................................................. 4

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010) ............................................................. 40

*Jones v. Medtronic Inc.*, --- F.Supp.3d ---,
  No. CV-14-00383-PHX-SPL, 2019 WL 38167071
  (D. Ariz. Aug. 14, 2019) .................................................................... 28

vii

*Kellman v. Whole Foods Mkt., Inc.,*
    313 F. Supp. 3d 1031 (N.D. Cal. 2018) .................................................. 19

*Kona Enters., Inc. v. Estate of Bishop,*
    229 F.3d 877 (9th Cir. 2000) ................................................................ 15

*Krug v. Lomonaco,*
    2 F.3d 1157 (9th Cir. 1993) .................................................................. 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ....................................................................... passim

*Louis Vuitton Malletier, S.A. v. Mosseri,*
    736 F.3d 1339 (11th Cir. 2013) ............................................................ 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 45, 52

*Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.,*
    663 F. Supp. 2d 841 (D. Ariz. 2009) ..................................................... 20

*Martinez v. Aero Caribbean,*
    764 F.3d 1062 (9th Cir. 2014) .............................................................. 28

*Mattel, Inc. v. Greiner & Hausser GmbH,*
    354 F.3d 857 (9th Cir. 2003) .................................................... 18, 29, 35

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.,*
    890 F.3d 995 (Fed. Cir. 2018) ............................................................. 24

*Moran v. Screening Pros, LLC,*
    943 F.3d 1175 (9th Cir. 2019) .............................................................. 15

*Myers v. Johns Manville Sales Corp.,*
    600 F. Supp. 977 (D. Nev. 1984) .......................................................... 22

*Navajo Nation v. Dep't of the Interior,*
    876 F.3d 1144 (9th Cir. 2017) .................................................. 16, 26, 39

viii

*Ochoa v. J.B. Martin & Sons Farms, Inc.*,
  287 F.3d 1182 (9th Cir. 2002) ............................................................ 21

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .............................................................. 66

*Ohio Citizen Action v. City of Englewood*,
  671 F.3d 564 (6th Cir. 2012) .............................................................. 41

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
  877 F.3d 895 (10th Cir. 2017) ............................................................ 34

*Original Creations, Inc. v. Ready Am., Inc.*,
  836 F. Supp. 2d 711 (N.D. Ill. 2011) .................................................. 42

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................... 16, 18, 32, 34

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) .............................................................. 23

*Rosen v. Universal Autograph Collectors Club, Inc.*,
  No. CV 07-3515, 2008 WL 11338013 (C.D. Cal. Jan. 8, 2008) ........... 44

*Sangha v. Navig8 ShipManagement Private Ltd.*,
  882 F.3d 96 (5th Cir. 2018) ................................................................ 16

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................. 18, 22, 30, 43

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ............................................. 19, 20, 21, 22

*Spacey v. Burgar*,
  207 F. Supp. 2d 1037 (C.D. Cal. 2001) .............................................. 37

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (U.S. 2016) .......................................................... 45, 49

*Spring Patents, Inc. v. Avon Rubber & Plastics, Inc.*,
   183 F. Supp. 2d 1212 (D. Haw. 2001)....................................20

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)......................................17, 27, 39

*ThermoLife International, LLC v. NeoGenis Labs, LLC*,
   No. 2:18-cv-2980, 2019 WL 1438293 (D. Ariz. Apr. 1, 2019).........47, 48

*ThermoLife International, LLC v. Sparta Nutrition LLC*,
   No. CV-19-01715, 2020 WL 248164
   (D. Ariz. Jan. 16, 2020) ..............................................48, 49, 64

*United States v. Swiss Am. Bank, Ltd.*,
   274 F.3d 610 (1st Cir. 2001) ............................................23

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)............................................65

*Walden v. Fiore*,
   571 U.S. 277 (2014)................................................... passim

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007)....................................64

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)........................................33, 34

*Wilson v. PTT, LLC*,
   351 F. Supp. 3d 1325 (W.D. Wash. 2018) ...............................19

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997) ..........................38, 41, 42

**Statutes and Constitutions**

Article III of the United States Constitution ................................. passim

15 U.S.C. § 1125(a) ................................................................ 1, 9, 55, 56

15 U.S.C. § 1127 ...................................................................... 56

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1367 ...................................................................... 1

## Court Rules

Fed. R. App. P. 4(a)(1) ............................................................. 1

Fed. R. App. P. 4(a)(4) ............................................................. 1

Fed. R. App. P. 26.1 ................................................................. i

Fed. R. Civ. P. 9(b) ................................................... 3, 14, 65, 67, 68

Fed. R. Civ. P. 12(b)(2) ......................................................... 4, 15, 22

Fed. R. Civ. P. 12(b)(6) ......................................................... 4, 15

9th Cir. R. 36-3(c) .................................................................. 22

Ariz. R. Civ. P. 4.2(a) ............................................................. 28

## Other Authorities

BLACK'S LAW DICTIONARY (11th ed. 2019) ("expressly") ........................... 31

4 FED. PRAC. & PROC. CIV. § 1067.6 (4th ed. Aug. 2019) ......................... 22

James P. Donohue, 1 INTERNET LAW & PRAC. § 9:14 (Nov. 2019) ........... 42

# JURISDICTIONAL STATEMENT

In its Complaint, Plaintiff–Appellant ThermoLife International, LLC alleged claims under the Lanham Act, 15 U.S.C. § 1125(a), and state common law. 2 ER 172–75. The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4(a)(1) and 4(a)(4). On July 17, 2019, the district court entered an order and final judgment, dismissing all claims asserted in the Complaint. 1 ER 5–12. On July 31, 2019, ThermoLife moved for reconsideration of the district court's judgment, and on August 6, 2019, the district court entered an order denying the motion. 1 ER 2–4. On August 23, 2019, ThermoLife moved for leave to seek further reconsideration, 1 ER 17–21, which the district court denied by order entered on August 27, 2019, 1 ER 1. ThermoLife filed its notice of appeal on August 30, 2019. 2 ER 13–17.

1

## STATEMENT OF THE ISSUES

1.      Although Defendant–Appellee NetNutri.com LLC challenged personal jurisdiction, Plaintiff–Appellant ThermoLife International, LLC did not submit any evidence to support its jurisdictional allegations. The question is whether ThermoLife did not show a prima-facie case for personal jurisdiction because it failed to meet its burden of submitting evidence.

2.      ThermoLife's Complaint offers no specific facts to show that online-retailer NetNutri directed any conduct at Arizona, where ThermoLife is headquartered, or even in fact sold any allegedly adulterated dietary supplements to Arizona residents during any specified period. The question is whether ThermoLife, if permitted to stand on the allegations of its Complaint, still failed to show a prima-facie case for personal jurisdiction.

3.      Although the district court dismissed for the lack of personal jurisdiction, this Court must affirm if the record supports another ground for affirmance. The Complaint fails to specifically and plausibly allege an actual, redressable injury in fact that is fairly traceable to

NetNutri. The question is whether the Court should affirm dismissal insofar as the Complaint fails to show Article III standing.

4.     ThermoLife sells raw creatine nitrate as an ingredient for dietary supplements but alleges that NetNutri unfairly competes with it by falsely advertising finished-product supplements made and labeled by others. The question is whether the Complaint fails to allege facts showing that ThermoLife falls within the Lanham Act's zone of interests and that NetNutri proximately caused competitive harm.

5.     ThermoLife alleges common-law claims for unfair competition and civil conspiracy that lack specific, plausible facts. The question is whether those claims should be dismissed for the failure to state a claim.

6.     Although Federal Rule of Civil Procedure 9(b) requires all fraud-based claims, like those asserted by ThermoLife, to be pleaded with particularity, the Complaint's allegations about NetNutri's alleged false statements and other alleged misconduct are vague and conclusory. The question is whether ThermoLife's claims should be dismissed for the failure to satisfy Rule 9(b).

## STATEMENT OF THE CASE

### I.    Statement of Facts

Under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), uncontroverted facts in the Complaint are taken as true, except that the Court need not assume the truth of mere conclusory allegations or legal claims asserted in the form of factual allegations. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

### A.    ThermoLife, an Arizona Company, Sells Raw Ingredients for Use in Dietary Supplements

As alleged in the Complaint, Plaintiff–Appellant ThermoLife International, LLC is an Arizona company with its principal place of business in Arizona. 2 ER 112 ¶ 8. ThermoLife manufactures and sells its patented creatine nitrate and other proprietary raw ingredients containing amino acids mixed with nitrates. 2 ER 113–14. ThermoLife sells those raw ingredients for inclusion in dietary supplements that others manufacture and market to consumers who want to gain muscle or improve athletic performance. *Id*. For example, ThermoLife's creatine nitrate is the "marquee ingredient" in "C4," alleged to be "the world's top-selling pre-workout product," which is made and marketed by non-party Cellucor. 2 ER 114 ¶ 23.

4

### B. NetNutri, a New Jersey Company, Advertises Dietary Supplements for Sale Online

Defendant–Appellee NetNutri.com LLC is a New Jersey company with its principal place of business in New Jersey. 2 ER 107, 112. NetNutri maintains a website, www.netnutri.com, that offers over 7,000 products for sale, including products that contain ingredients or technology sourced or licensed from ThermoLife. 2 ER 115–16. NetNutri's website is "one of the most popular online retailers" of dietary supplements and has developed a "devoted customer base." 2 ER 115 ¶ 27.

Per the Complaint, NetNutri's "interactive" website sorts dietary supplements into categories based on customers' fitness needs, features top-selling supplements, "promotes" the supplements it sells, claims to offer supplements at lower prices than offered by other online retailers, and claims to offer for sale certain products not sold by other online retailers. 2 ER 112 ¶ 9; 2 ER 115–16 ¶¶ 29–31.

### C. ThermoLife Alleges That NetNutri Unfairly Competes with ThermoLife in Arizona by Offering Adulterated Supplements for Sale Online

According to the Complaint, of the 7,000+ products offered for sale on NetNutri's website, 278 "contain drugs," are "adulterated," and "are

misbranded when labeled as Dietary Supplements." 2 ER 115 ¶ 28; *see* 2 ER 121–22 ¶¶ 52–53. The supplement-facts panels for certain products advertises the inclusion of botanicals and exotic ingredients, when the products instead contain a synthetic stimulant drug. 2 ER 122 ¶¶ 54–58. The Complaint alleges that: (1) certain products advertise geranium extract or oil but instead contain the drug DMAA, 2 ER 124–32; (2) certain products advertise juglans regia extract (walnut bark), aconitum kusnezoffi extract, or kigelia africana extract but instead contain the drug DMHA, 2 ER 132–39; and (3) certain products advertise acacia rigidula or sengalia berlandieri but instead contain the drug BMPEA or methylsynephrine, 2 ER 139–51. The Complaint also alleges that certain supplements contain the drugs isopropylnorsynephrine, 2 ER 151–56, arimistane, 2 ER 156–62, 1-DHEA, 2 ER 162–67, or 4-DHEA, 2 ER 167–72.

The Complaint does not allege that NetNutri participates in or has any control over the formulation, manufacturing, or labeling of the adulterated supplements (or any other products it sells). *See, e.g.*, 2 ER 115 ¶ 27. Instead, the Complaint identifies non-party manufacturers as responsible for designing and labeling the supplements, which NetNutri

6

simply offers for sale through its website. *See* 2 ER 115 ¶ 27, 2 ER 129 ¶ 87, 2 ER 135 ¶ 106, 2 ER 141 ¶ 122, 2 ER 148 ¶ 144, 2 ER 154 ¶ 161, 2 ER 160 ¶ 181, 2 ER 166 ¶ 197, & 2 ER 170 ¶ 213. (identifying third-party manufacturers).

The Complaint alleges formulaically that, within the two years before it was filed on November 28, 2018, the supplements at issue "have been sold and falsely marketed on NetNutri's website as Dietary Supplements." 2 ER 131 ¶ 88; 2 ER 138 ¶ 108; 2 ER 143 ¶ 124; 2 ER 151 ¶ 145; 2 ER 155 ¶ 162; 2 ER 161 ¶ 182; 2 ER 166 ¶ 198; 2 ER 171 ¶ 214; *see* 2 ER 111 ¶ 3 n.4. The Complaint alleges that NetNutri's website "offers for sale and sells the products at issue to Arizona customers and it ships products to such customers." 2 ER 112 ¶ 9. And "NetNutri is currently selling or has sold all of the products identified herein within the past 2 years." 2 ER 111 ¶ 3 n.4.

Per the Complaint, "NetNutri falsely advertises to Arizona customers and unfairly competes with ThermoLife in the state." 2 ER 112 ¶ 9. But the Declaration of Frank Huerta, which NetNutri filed in support of its motion to dismiss, says instead that "NetNutri has never directed advertising toward the citizens of Arizona, and while NetNutri

7

maintains a website, the website is not, and has never been, directed toward Arizona citizens." 2 ER 107 ¶ 8.

The Huerta Declaration further explains that NetNutri does not own property or file tax returns in Arizona. 2 ER 107 ¶¶ 6–7. NetNutri does not maintain in Arizona any office, store, bank account, telephone number, employee, or agent. *Id*. ¶ 6. NetNutri has never sent corporate representatives or agents into Arizona to solicit business. *Id*. ¶ 7. And between 2014 and 2018, less than 2% of NetNutri's gross revenue came from sales to persons in Arizona. *Id*. ¶ 9.

ThermoLife alleges that, due to NetNutri's website, ThermoLife has suffered "competitive" and "commercial" injury to its "reputation or sales," "commercial interests," and "identifiable economic interest in the Dietary Supplement market." 2 ER 111–12 ¶¶ 6–7; 2 ER 114 ¶ 26; 2 ER 173–75 ¶¶ 224–25, 228, 232–36, 241.

## II. Procedural History

### A. ThermoLife Sued NetNutri for Unfair Competition, and NetNutri Moved to Dismiss

ThermoLife filed its Complaint in the District of Arizona. 2 ER 109. ThermoLife asserts against NetNutri a claim under the Lanham

Act for false advertising, 15 U.S.C. § 1125(a), a common-law claim for unfair competition, and a claim for civil conspiracy. 2 ER 172–75.

NetNutri moved to dismiss for the lack of personal jurisdiction and for failure to state a claim. 2 ER 86–105 (motion and brief); 2 ER 37–50 (reply). Insofar as NetNutri moved to dismiss for the lack of personal jurisdiction, it supported its motion with the Declaration of Frank Huerta, an owner and manager. 2 ER 106–08. Although ThermoLife opposed the motion, it relied on its Complaint without submitting any evidence or requesting leave to take jurisdictional discovery. 2 ER 53–85 (response); 2 ER 178–80 (docket sheet). No evidentiary hearing was held. *See generally* 2 ER 178–80.

## B. Rulings Presented for Review

### 1. *The District Court Dismissed This Action for the Lack of Personal Jurisdiction over NetNutri*

On July 17, 2019, the district court entered a judgment dismissing this action because ThermoLife had failed to make a prima-facie showing of personal jurisdiction over NetNutri in Arizona. 1 ER 6–12 (order); 1 ER 5 (judgment). First, the district court concluded that it lacked general personal jurisdiction over NetNutri, holding that its

9

activities in Arizona were "insufficient" for it to be considered "at home" there. 1 ER 9.

Second, the district court held that it lacked specific personal jurisdiction over NetNutri. 1 ER 9–11. The district court faulted ThermoLife for relying solely on its Complaint for jurisdictional evidence. 1 ER 11.

Following *Walden v. Fiore*, 571 U.S. 277 (2014), the district court also concluded that, in any event, ThermoLife had failed to show NetNutri had purposefully directed its conduct at *Arizona*. 1 ER 11. Although ThermoLife alleged NetNutri operated a website through which some undefined amount of sales had been made to residents of Arizona, the required "something more" of purposeful direction at the State of Arizona itself had not been proved. *Id.* Instead, ThermoLife relied on its own connections to Arizona, which under *Walden* are no longer relevant to the jurisdictional inquiry. *Id.*

Having found that NetNutri was not subject to personal jurisdiction, the district court declined to address NetNutri's arguments that ThermoLife had failed to state a claim. 1 ER 12.

### 2.   *The District Court Denied ThermoLife's Motions for Reconsideration*

ThermoLife moved for reconsideration. 2 ER 27–36. ThermoLife proposed a per se rule that the out-of-forum operation of an "interactive website" plus even a single sale to a forum resident automatically results in personal jurisdiction in the forum over the website's operator. 2 ER 31, 33.

The district court denied ThermoLife's motion for reconsideration. 1 ER 2–4. The district court reiterated its holding that ThermoLife had, among other things, failed to meet its burden of submitting evidence beyond the allegations in its Complaint to show personal jurisdiction. 1 ER 3. The district court also construed the Huerta Declaration as controverting certain of the Complaint's allegations, which ThermoLife failed to rebut with evidence. *Id*. ThermoLife sought leave to file a second motion for reconsideration. 2 ER 17–21. The district court denied it, reiterating its position. 1 ER 1.

ThermoLife filed its notice of appeal on August 30, 2019, within 30 days after the district court had entered its order denying ThermoLife's first motion for reconsideration (on August 6, 2019). 1 ER 2–4; 2 ER 13–15.

11

## SUMMARY OF ARGUMENT

This appeal concerns the dismissal of a complaint that, for both personal jurisdiction and its claims for relief, relied on speculation.

Plaintiff–Appellant ThermoLife International, LLC, an Arizona manufacturer of raw ingredients for dietary supplements, sued Defendant–Appellee NetNutri.com LLC, a new Jersey online retailer of dietary supplements and other products. ThermoLife alleged that NetNutri unfairly competed with ThermoLife through online retailing because the ingredients of certain dietary supplements that NetNutri sells are mislabeled and falsely advertised on its website.

ThermoLife sued NetNutri in Arizona, where ThermoLife is headquartered. The district court dismissed ThermoLife's Complaint for the lack of personal jurisdiction over NetNutri. That ruling was correct and should be affirmed. First, although NetNutri—a New Jersey company with no Arizona presence—challenged personal jurisdiction, ThermoLife rested on its Complaint and submitted no evidence. The district court correctly held that ThermoLife's prima-facie burden to show personal jurisdiction required it to submit evidence to support its allegations, which ThermoLife failed to do. Contrary to this Court's

12

precedent, ThermoLife rested on its Complaint even though NetNutri submitted a declaration disputing ThermoLife's allegations that NetNutri had targeted Arizona through its website.

Second, even if ThermoLife had formally met its evidentiary burden, it still failed to make a prima-facie case for personal jurisdiction over NetNutri in Arizona. Under *Walden v. Fiore*, 571 U.S. 277 (2014), the fact that ThermoLife allegedly suffered harm in Arizona no longer matters under the effects test for intentional torts, and ThermoLife had to show—but failed to show—that NetNutri otherwise aimed its conduct at Arizona. In fact, although NetNutri concedes that less than 2% of its nationwide sales from 2014 to 2018 had been made to Arizona residents, there is no evidence that NetNutri ever sold an Arizona resident one of the allegedly adulterated dietary supplements that forms the basis for ThermoLife's claims. ThermoLife's case for personal jurisdiction in Arizona is merely conclusory and speculative.

Even if the Court were to find personal jurisdiction over NetNutri, it should still affirm the dismissal. NetNutri argued below other grounds for dismissal. Although the district court relied solely on the

lack of personal jurisdiction as a basis to dismiss, this Court must affirm for any reason supported by the record.

ThermoLife's speculative Complaint fails to show Article III standing because it alleges no redressable injury in fact that is fairly traceable to NetNutri's conduct. ThermoLife's Lanham Act claim fails because ThermoLife is not within the statutory zone of protection and cannot show that NetNutri caused its alleged injury. ThermoLife's common-law unfair competition and conspiracy claims fail for the same reasons and also because, as with the Lanham Act claim, the Complaint's allegations about NetNutri's supposedly wrongful conduct are merely conclusory and theoretical. Similarly, ThermoLife's claims, all of which are fraud-based, come nowhere close to meeting the specificity required by Federal Rule of Civil Procedure 9(b). For those reasons as well, the Court should affirm the dismissal of ThermoLife's Complaint.

Though quite specific about some things, such as identifying certain dietary supplements as allegedly adulterated with drugs, the Complaint otherwise lacks non-speculative details about NetNutri's contacts with Arizona or the basis for NetNutri's alleged wrongdoing.

# ARGUMENT

## I. Standards of Appellate Review

This Court reviews de novo a district court's dismissal for the lack of personal jurisdiction under Rule 12(b)(2). *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). The factual findings underlying the district court's jurisdiction determination are reviewed for clear error. *Id.* Denial of a motion for reconsideration is reviewed for the abuse of discretion. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

In reviewing the district court's dismissal, this Court may affirm on any ground supported by the record. *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998). "If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." *Id.*

Insofar as the Court reviews the district court's dismissal under Rule 12(b)(6) for the failure to state a claim based on arguments not relied on by the district court, the review is de novo. *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1179 (9th Cir. 2019).

15

## II. The District Court Properly Dismissed the Complaint for the Lack of Personal Jurisdiction over NetNutri

The Court should affirm the district court's dismissal of this action for the lack of personal jurisdiction over NetNutri. ThermoLife bears the burden of proving personal jurisdiction. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Where, as here, NetNutri's motion to dismiss for the lack of personal jurisdiction was "based on a written record and no evidentiary hearing [was] held, '[ThermoLife] need only make a prima-facie showing of jurisdictional facts.'" *See id*.

That prima-facie "standard is not toothless." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "Although jurisdictional allegations must be accepted as true [unless controverted], such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "'Conclusory allegations and unreasonable inferences . . . are 'insufficient to defeat a motion to dismiss.'" *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (citation omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by

specific factual allegations" will not do. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

### A. By Standing on Its Complaint, ThermoLife Failed to Meet Its Evidentiary Burden for Specific Personal Jurisdiction

The district court correctly concluded that ThermoLife—by relying on its Complaint for its jurisdictional proof—failed to meet its evidentiary burden to make a prima-facie case of personal jurisdiction.

In ordering dismissal, the district court observed that ThermoLife "has not provided any new facts in its Response but relies on its allegation in the Complaint that [NetNutri] sells and ships products to Arizona through an interactive website." 1 ER 11. And in its order denying reconsideration, the district court explained that ThermoLife "did not provide an affidavit, declaration or any other evidence to begin to show [NetNutri] operates an 'interactive website' in Arizona—much less a 'highly interactive website,' as [ThermoLife] characterizes the website in its Motion for Reconsideration." 1 ER 3. Thermolife "'could not simply rest on the bare allegations of its [C]omplaint, but rather was obligated to come forward with facts, by affidavit or otherwise,

supporting personal jurisdiction.'" 1 ER 3 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

ThermoLife admits, as it must, that the Court may not take as true any allegations in the Complaint that are controverted by NetNutri's evidence. *See* ThermoLife's Br., p. 14; *see Picot*, 780 F.3d at 1209 n.1. And any "conflicts between the facts contained in *declarations* submitted by the two sides must be resolved in [the plaintiff's] favor." *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (emphasis added). Those rules assume that, in the face of a motion to dismiss for the lack of personal jurisdiction, the plaintiff will submit evidence—such as a declaration—to support its complaint.

The Court should reject ThermoLife's contention that, when opposing a motion to dismiss on personal jurisdiction, a plaintiff needs to submit evidence outside its complaint *only if* and *to the extent that* the movant's affidavit contradicts facts in the pleadings. ThermoLife's Br., pp. 14–15. This Court has asserted numerous times that "[t]he party asserting jurisdiction 'cannot simply rest on the bare allegations of its complaint.'" *In re Boon*, 923 F.3d at 650 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). And this

18

Court has explained that, "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with *facts*, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba*, 551 F.2d at 787) (emphasis added).

Relying on those and similar authorities, various district courts within the Ninth Circuit have concluded correctly that, to show even a prima-facie case for personal jurisdiction when the defendant contests it, a plaintiff must supplement its allegations with evidence—and the failure to do so is fatal.[1] As a district court in Hawaii observed, in *Amba* "[t]he Ninth Circuit held that [plaintiff] 'could not simply rest on the bare allegations of its complaint, but rather was obligated to come forward with facts, by affidavit or otherwise, supporting personal

---

[1] *See, e.g., Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1331 (W.D. Wash. 2018) (A "plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. . . . A prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction."); *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1045 (N.D. Cal. 2018) ("[O]n a motion to dismiss for lack of personal jurisdiction where the defendants have submitted a sworn declaration, the plaintiffs may not rest on bare, unsworn allegations in their complaint. . . . [Plaintiffs'] bare allegations are insufficient . . . .").

jurisdiction.'" *Spring Patents, Inc. v. Avon Rubber & Plastics, Inc.*, 183 F. Supp. 2d 1212, 1217 (D. Haw. 2001) (discussing *Amba*, 551 F.2d 784). "Because [the plaintiff in *Amba*] had made no showing that defendant's items had actually made their way into the forum state, the Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction." *Id.* The same result is proper here.

Relying on some of the same Ninth Circuit opinions cited above, a few district courts have suggested that a plaintiff *may* rest solely on its complaint's allegations, without supporting evidence, if they are not controverted. "To satisfy his burden, a plaintiff can rely on the allegations in his complaint to the extent they are not controverted by the moving party. *If* defendants adduce evidence controverting the allegations, however, the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 981–82 (C.D. Cal. 2013) (emphasis added) (quoting *Scott*, 792 F.2d at 927); *accord, e.g.*, *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp. 2d 841, 850 (D. Ariz. 2009) (finding personal jurisdiction where, "[f]or its *prima facie* showing of personal jurisdiction, Plaintiff relies exclusively on the

allegations set forth in its complaint."). But such opinions are inconsistent with this Court's precedent.

ThermoLife, like the district court in *Barantsevich*, extracts from this Court's prior holding—that uncontroverted allegations in the Complaint are taken as true—the unsupported corollary that, when personal jurisdiction is contested, a plaintiff may choose to stand on its complaint alone. *See* ThermoLife's Br., pp. 14–15 (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588–89 (9th Cir. 1996) and *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002)); *Barantsevich*, 954 F. Supp. 2d at 981–82 (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).[2] To the contrary, even when the complaint's allegations are not controverted by declaration, the plaintiff's burden of making a prima-facie jurisdictional case still demands *evidence*. "The party asserting jurisdiction bears the

---

[2] *Barantsevich* misquotes *Scott* as saying "*[i]f defendants adduce evidence controverting the allegations*, however, the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" 954 F. Supp. 2d at 982 (emphasis added). But *Scott* says "*[w]hen a defendant moves to dismiss for lack of personal jurisdiction*, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott*, 792 F.2d at 927 (emphasis added) (citation omitted).

21

burden to *establish jurisdictional facts*." *In re Boon*, 923 F.3d at 650 (emphasis added).

ThermoLife otherwise relies principally—and improperly—on *Krug v. Lomonaco*, 2 F.3d 1157 (9th Cir. 1993), an unpublished decision that is not precedential. *See* ThermoLife's Br., p. 14. "Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit," and no exception applies here. 9th Cir. R. 36-3(c).

Consistent with *Amba*, *Scott*, and *Schwarzenegger*, this Court should reiterate that "[w]hen a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint." 4 FED. PRAC. & PROC. CIV. § 1067.6 (4th ed. Aug. 2019). This Court's precedents contemplate that "'pleadings and affidavits'" are required to establish a prima-facie showing of personal jurisdiction. *See In re Boon*, 923 F.3d at 650 (citation omitted). "When the court chooses to decide the pretrial jurisdiction question on the basis of affidavits, it may *also* consider the allegations contained in the complaint." *See Myers v. Johns Manville Sales Corp.*, 600 F. Supp. 977, 981 (D. Nev. 1984) (emphasis added). But this Court should

explain that to prove personal jurisdiction, the plaintiff may never, when challenged, rely on a complaint's allegations alone.

That holding comports with this Court's precedent, is consistent with the rule of many other circuits, and should be reaffirmed.[3] When

---

[3] *See, e.g.*, *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) ("'The prima facie showing must be based upon evidence of specific facts set forth in the record.' To meet this requirement, the plaintiff must 'go beyond the pleadings and make affirmative proof.'" (citations omitted)); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) ("In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." (citation omitted)); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) ("'[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" (citation omitted)); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003) ("[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."); *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) ("'If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction.' Its 'showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.'" (citations omitted)); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) ("When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" (citation omitted)); *see also, e.g., Dental Dynamics, LLC v. Jolly Dental Grp.,*

23

personal jurisdiction is challenged, it is fair to ask a plaintiff to support its pleading with proof, especially as plaintiffs have the option of requesting expedited jurisdictional discovery—an option ThermoLife forewent. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("'Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" (citation omitted)). To the extent precedent might confuse or obscure this holding, this Court should clarify it.

Accordingly, the Court should affirm the dismissal of this action for the lack of personal jurisdiction because ThermoLife did not support the jurisdictional allegations of its Complaint with a declaration or other competent evidence.

---

*LLC*, --- F.3d ---, No. 18-6107, 2020 WL 119961, at *2 (10th Cir. Jan. 9, 2020) (reviewing prima-facie case of personal jurisdiction based on the "complaint *and accompanying affidavits*") (emphasis added); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ("'[A] district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.'" (citation omitted)); *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990) ("The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant.").

**B.    By Not Submitting Evidence to Support Disputed Allegations, ThermoLife Failed to Meet Its Evidentiary Burden for Specific Personal Jurisdiction**

Alternatively, at a minimum this Court should affirm because ThermoLife failed to submit a declaration or any other evidence in response to NetNutri's submission of the Huerta Declaration. 2 ER 107. ThermoLife is wrong when it says that the Huerta Declaration did not controvert the Complaint's jurisdictional allegations. *See* ThermoLife's Br., pp. 14–18. To the extent the Huerta Declaration controverted the Complaint's jurisdictional allegations, ThermoLife failed to meet even its own standard of producing evidence. *See* ThermoLife's Br., pp. 1415; *Barantsevich*, 954 F. Supp. 2d at 981–82.

First, the Complaint alleged that "NetNutri *falsely advertises to Arizona customers*," suggesting that NetNutri's website specifically targets people in Arizona. 2 ER 112 ¶ 9 (emphasis added); ThermoLife's Br., p. 6. And in its opening brief, ThermoLife says NetNutri conducted "commercial activity *directed toward Arizona*." ThermoLife's Br., p. 6 (emphasis added). But that is contradicted by the Huerta Declaration: "NetNutri has never directed advertising toward the citizens of Arizona,

and while NetNutri maintains a website, the website is not, and has never been, directed toward Arizona citizens." 2 ER 107 ¶ 8.

Second, the Complaint alleged that "NetNutri unfairly competes with ThermoLife in the state [of Arizona]," suggesting that NetNutri has some business presence within Arizona. 2 ER 112 ¶ 9; ThermoLife's Br., p. 6. But that was also contradicted by the Huerta Declaration, which says that NetNutri does *not* maintain in Arizona any property, office, store, bank account, telephone number, employee, or agent and has never sent any corporate representatives or agents into Arizona to solicit business. 2 ER 107 ¶¶ 6–7.

Third, although in a single allegation ThermoLife labeled NetNutri's website as "interactive," 2 ER 112 ¶ 9, that is merely a legal conclusion that need not be taken as true.[4] This Court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation*, 876 F.3d at 1163. As the district court found, 1 ER 3, and as discussed further below, ThermoLife's Complaint lacks both specific factual allegations and evidence to

---

[4] For further analysis of this point, see *infra* II.C.2.

26

support its refrain that NetNutri operates a "highly interactive website."

Fourth, equally conclusory and unsupported were ThermoLife's allegations about NetNutri's sales in Arizona of the allegedly adulterated supplements. Although the Huerta Declaration says that between 2014 and 2018 "less than 2% of NetNutri's gross revenue has come from sales to Arizona," 2 ER 107, that says nothing about the percentage or number of sales of the *allegedly adulterated supplements* at issue. As further explained below, on that crucial fact the Complaint offers no help. Such "'bare bones' assertions of minimum contacts with the forum . . . unsupported by specific factual allegations" need not be controverted to be invalidated—they are inherently insufficient. *See Swartz*, 476 F.3d at 766. ThermoLife's purported reliance on the Huerta Declaration does not cure that deficiency.

Because ThermoLife failed to meet its responsive burden of producing *evidence* to support controverted and conclusory jurisdictional allegations, the Court should affirm dismissal for the lack of personal jurisdiction. *See Cigna Prop. & Cas. Ins. Co.*, 159 F.3d at

418 (Court of Appeals may affirm on any ground supported by the record).

### C. Even If ThermoLife Did Not Have to Submit Evidence Outside Its Complaint, It Failed to Make a Prima-Facie Case for Specific Personal Jurisdiction

Even if ThermoLife were permitted to stand on its Complaint and rely on NetNutri's Huerta Declaration to prove personal jurisdiction, the Court should still affirm. ThermoLife has failed to make a prima-facie showing of specific personal jurisdiction.

#### 1. *Federal Due Process Is the Sole Inquiry*

This action was filed in the District of Arizona. 2 ER 109. Where, as in this case, "'there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.'" *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). As the district court correctly held, Arizona's long-arm statute permits the exercise of personal jurisdiction "to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a); 1 ER 7–8; *accord Jones v. Medtronic Inc.*, --- F.Supp.3d ---, No. CV-14-00383-PHX-SPL, 2019 WL 3816707, at *1 (D. Ariz. Aug. 14, 2019). We thus look solely to federal due-process principles for exercising specific personal jurisdiction.

28

Under those principles, ThermoLife must show that NetNutri has "certain minimum contacts with [Arizona] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation and internal quotation marks omitted). That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citation and internal quotation marks omitted).

### 2. *ThermoLife Fails to Make a Prima-Facie Showing of Purposeful Direction or Causation*

Because ThermoLife alleges torts, to show specific personal jurisdiction it must prove that (1) NetNutri purposefully directed its activities toward Arizona and (2) each claim causally arises out of or relates to NetNutri's forum-related activities. *See Axiom*, 874 F.3d at 1068; *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003) (applying but-for test). Assuming the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), also applies because the torts alleged here are classified as intentional, ThermoLife must further show that NetNutri committed intentional acts "expressly aimed" at Arizona and caused "'harm that [NetNutri] knows is likely to be suffered in the

29

forum state.'" *See Axiom*, 874 F.3d at 1068 (citation omitted). Only if ThermoLife makes a prima-facie case for each requirement would the burden shift to NetNutri to show that exercising personal jurisdiction over it would be unreasonable. *See id.*[5]

ThermoLife cannot meet its burden. First, ThermoLife has failed to make a prima-facie showing that that NetNutri purposefully directed any conduct toward the *State of Arizona*.

In *Schwarzenegger*, this Court clarified that "express aiming" demands more than mere foreseeability that an act might have some effect in the forum state; rather, the conduct must specifically target the *forum state itself*. 374 F.3d at 806–07. And more recently, in *Walden* the Supreme Court held that courts "must look to the defendant's 'own contacts' with the forum, *not* to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom*, 874 F.3d at 1070 (citing *Walden*, 571 U.S. at 289) (emphasis added). Thus, merely targeting a forum *resident*, "without more, is insufficient to comply with due process." *Id*.

---

[5] As further discussed below in this section, *Calder* should not apply here.

The same principles control here, where the alleged basis for personal jurisdiction is the advertising of dietary supplements via a nationally accessible website. *See* 2 ER 115–16 ¶¶ 27–36. "[T]raditional jurisdictional analyses are not upended simply because a case involves technological developments that make it easier for parties to reach across state lines." *Boschetto*, 539 F.3d at 1019.

The Complaint alleges that NetNutri unfairly competes with ThermoLife on a national level (in the "Dietary Supplement market") by falsely advertising as dietary supplements certain products that in fact contain drugs. *See* 2 ER 110–12 ¶¶ 1–7. But the record lacks any competent evidence that NetNutri expressly aimed *any* conduct at *Arizona*. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "expressly" as clearly, unmistakably, directly, and overtly (as opposed to impliedly)).

As far as NetNutri's conduct is concerned, the Complaint mentions the word "Arizona" a total of three times. ThermoLife alleges that "NetNutri markets and distributes Dietary Supplements throughout the United States, including in Arizona." 2 ER 112 ¶ 9. ThermoLife alleges that, NetNutri through its website "offers for sale

and sells the products at issue to Arizona customers and it ships its products to such customers." *Id*. And ThermoLife alleges that NetNutri "falsely advertises to Arizona customers and unfairly competes with ThermoLife in the state." *Id*. That's it.

Insofar as ThermoLife suggests that NetNutri tailors advertising toward Arizona or maintains any competing business presence in Arizona, the allegations are directly disputed. The Huerta Declaration explains that "NetNutri has never directed advertising toward the citizens of Arizona, and while NetNutri maintains a website, the website is not, and has never been, directed toward Arizona citizens." 2 ER 107 ¶ 8. NetNutri does not own property or file tax returns in Arizona. 2 ER 107 ¶¶ 6–7. NetNutri does not maintain in Arizona any property, office, store, bank account, telephone number, employee, or agent. *Id*. ¶ 6. And NetNutri has never sent a corporate representative or agent into Arizona to solicit business. *Id*. ¶ 7.

Because NetNutri's evidence contradicts ThermoLife's Arizona-related allegations, those allegations may not be taken as true. *See In re Boon*, 923 F.3d at 650; *Picot*, 780 F.3d at 1209 n.1. Moreover, courts need not "'accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (citation omitted). No non-speculative allegation or evidence shows that NetNutri, whether through its website or otherwise, directed *any* conduct at *Arizona*.

Nor does ThermoLife's contention that NetNutri is "causing harm to ThermoLife, an Arizona resident," supply a jurisdictionally significant Arizona contact. *See* ThermoLife's Br. at 11, 18; 2 ER 112, 173–75 ¶¶ 7, 224, 232, 241 (generic allegations of commercial injury). There is no competent allegation or evidence that NetNutri's allegedly unlawful conduct specifically targets ThermoLife.

The mere fact that ThermoLife is an allegedly injured Arizona company headquartered in Arizona makes no difference. *See* 2 ER 112 ¶ 8. Under *Walden*, even a showing of individualized targeting (which is missing here) "will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom*, 874 F.3d at 1070. And what *Walden* requires is NetNutri's "contacts with *the forum State itself*, not [its] contacts with persons who reside there," *see Walden*, 571 U.S. at 284 (emphasis added). "[M]ere injury to a forum

resident is not a sufficient connection to the forum." *Id*. at 290. That is so even if *Calder*'s effects test were to apply here post-*Walden*—and it shouldn't.[6]

Thus, the "proper question is not where [ThermoLife] experienced a particular injury or effect but whether [NetNutri]'s conduct connects [it] to [Arizona] in a meaningful way." *See Walden*, 571 U.S. at 290. And ThermoLife's alleged "injury . . . is not tethered to [Arizona] in any meaningful way." *See Picot*, 780 F.3d at 1215.

As for contacts with Arizona, then, all that remains to be considered is that NetNutri has, through its website, sold and shipped dietary supplements to some unidentified number of Arizona residents. 2 ER 111–12 ¶¶ 3, 9. But those facts also are too conjectural and vague to be jurisdictionally cognizable. *See Wilson*, 668 F.3d at 1145 n.4. A

---

[6] By explaining that *Calder*'s effects test "was largely a function of the nature of the libel tort," *Walden*, 571 U.S. at 287, *Walden* has "suggested that the *Calder* effects test does not extend beyond the defamation context," *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 916 (10th Cir. 2017). So understood, the inquiry here would focus on purposeful direction and causal nexus, *Axiom*, 874 F.3d at 1068, without *Calder*'s overlay. That reading of *Walden* is accurate. At a minimum, even for an intentional tort, a plaintiff may no longer rely on its own suffering of injury in the forum state as itself (as alleged here) a jurisdictionally relevant fact.

prima-facie case demands far more specificity. *Cf. Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112–13 (9th Cir. 2003) (stating in summary judgment context that "unsupported conjecture or conclusory statements" were insufficient to make prima-facie case).

ThermoLife alleges that NetNutri.com advertises for sale over 7,000 products, including 278 dietary supplements that are adulterated with drugs and thus falsely advertised. 2 ER 115 ¶¶ 27–28. The Huerta Declaration states that "[b]etween 2014 and 2018, less than 2% of NetNutri's gross revenue has come from sales to Arizona" residents." 2 ER 107 ¶ 9. ThermoLife characterizes those sales as showing significant "commercial activity directed toward Arizona." ThermoLife's Br. at 6. But no record evidence shows *how many* sales to *Arizona residents* that "less than 2%" entailed. Even more critically, we have *no idea* how many—if any—of that undetermined number of sales involved one of the *allegedly adulterated supplements*.

ThermoLife must show, but does not show, that its claims causally arose from sales of adulterated supplements to Arizona residents. *See Mattel*, 354 F.3d at 864 (plaintiff must show but-for causal nexus). This

conclusion is further supported by ThermoLife's failure to plausibly allege that NetNutri competes with it. *See infra*.

ThermoLife's Complaint, even if independently acceptable as evidence, does not fill that evidentiary gap. It alleges that NetNutri "offers for sale and sells the products at issue to Arizona customers and it ships products to such customers." 2 ER 112 ¶ 9. But that simple present-tense allegation, rather than providing an historical account of specific sales in the past, just describes NetNutri's posture as a seller. It does not tell us historically how many sales NetNutri has in fact made to Arizona residents; nor does it say how many, if any, sales of the allegedly adulterated supplements NetNutri has in fact made to Arizona residents during any specified timeframe. The allegations are thus fatally vague and speculative. "[A]n unsubstantiated and vague statement does not establish a prima facie case for jurisdiction." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).

The Complaint's remaining allegations about sales are equally vague and speculative. Although ThermoLife alleges that NetNutri "markets and distributes Dietary Supplements throughout the United

States, including in Arizona," we have no specific facts about sales to Arizona residents. *Id*.[7]

Similarly, ThermoLife alleges formulaically that, within the two years before the Complaint was filed (on November 28, 2018), all the products at issue "have been sold and falsely marketed on NetNutri's website as Dietary Supplements." 2 ER 131 ¶ 88; 2 ER 138 ¶ 108; 2 ER 143 ¶ 124; 2 ER 151 ¶ 145; 2 ER 155 ¶ 162; 2 ER 161 ¶ 182; 2 ER 166 ¶ 198; 2 ER 171 ¶ 214. But that does not show that, during any specific period, any of the allegedly adulterated supplements were sold *to an Arizona resident*.

"[C]onclusory statements are not enough to satisfy a prima facie showing of jurisdiction without supporting evidence contained in the record." *Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1049 (C.D. Cal. 2001). In fact, the Complaint itself confirms it is merely conclusory and speculative when it alleges that "NetNutri is currently selling *or* has sold all of the products identified herein within the past 2 years." 2 ER 111 ¶ 3 n.4 (emphasis added). Not only does that tell us nothing about

---

[7] To the extent that allegation suggests anything other than online selling and remote shipping, it is also contradicted by the Huerta Declaration. 2 ER 107.

sales of the allegedly adulterated products to Arizona residents, but its alternatives cast doubt on whether such sales have in fact occurred.

Focusing almost exclusively on the sliding scale this Court has adopted for personal jurisdiction involving internet sales, ThermoLife contends that even a single sale to an Arizona resident through an "interactive website" is automatically enough for specific personal jurisdiction there. *See* ThermoLife's Br. at 18–26. That position is flawed both legally and factually. As the district court correctly observed, ThermoLife has not even proved that www.netnutri.com is "interactive," much less "highly interactive." *See* 1 ER 3.

In *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), this Court—following *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)—held that the "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." "Passive" websites that merely post information are less likely to yield personal jurisdiction over their operators, while "interactive" websites, through which information is mutually exchanged, are more likely to do so. *See Cybersell*, 130 F.3d at

418. Classifying a website as "interactive" thus carries legal significance.

In a single paragraph, ThermoLife's Complaint alleges the legal conclusion that www.netnutri.com is an "interactive website." 2 ER 112 ¶ 9. As a mere legal conclusion, that allegation need not be taken as true. *See Navajo Nation*, 876 F.3d at 1163; *Swartz*, 476 F.3d at 766. Yet ThermoLife offers virtually no factual allegations to support it. ThermoLife alleges, and NetNutri does not dispute, that consumers can purchase dietary supplements via www.netnutri.com. 2 ER 112 ¶ 9. Though that necessarily involves some undefined level of "interactivity," as discussed above it still tells us nothing about NetNutri's sales of allegedly adulterated supplements to Arizona residents.

The Complaint alleges www.netnutri.com "sorts dietary supplements into several categories based on a customer's fitness needs," "includes a list of 'Featured Products,'" and "sorts Dietary Supplements by popularity, allowing customers to view the Top 50 Products." 2 ER 115–16 ¶¶ 29–30. But none of those allegations show *how* the website interacts with consumers, and each is consistent with a merely passive website that just posts information. As to online

39

interactivity, which today entails many modes of interaction (ranging from websites' collection of data about consumers who merely view them to live online chats), the record is otherwise silent.[8]

More importantly, the record does not even show "that [NetNutri] engaged in any transaction or exchange of information with a[n Arizona] resident via [www.netnutri.com], or that a[n Arizona] resident ever accessed the website," to purchase one of the *allegedly adulterated supplements*. *See Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010). Nor does NetNutri target Arizona in other ways. 2 ER 107.

Thus, even if www.netnutri.com were classified as "interactive," *see* 1 ER 11, ThermoLife leaves us without "something more" that would justify exercising specific personal jurisdiction here. *See Cybersell*, 130 F.3d at 418 ("something more" than mere online advertisement is required). "'If [NetNutri] merely operates a website, even a highly interactive website, that is accessible from, but does not target, the

---

[8] ThermoLife's allegations based merely on information and belief, 2 ER 116 ¶¶ 32, 34, which make no substantive difference anyway, should not be taken as true even if uncontradicted. "'Conclusory allegations showing the presence of jurisdiction, particularly those stated only upon information and belief, are insufficient to establish that the court has personal jurisdiction over the defendant.'" *Cernansky v. Lefebvre*, 88 F. Supp. 3d 299, 308 (D. Vt. 2015) (citation omitted).

forum state, then [it] may not be haled into court in that state without offending the Constitution." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012). In sum, because ThermoLife's evidence is insufficient, it flunks its own test.

Moreover, using *Zippo*'s (and *Cybersell*'s) "interactivity" scale as a talisman for personal jurisdiction—as ThermoLife wrongly suggests—is both anachronistic and inconsistent with the Supreme Court's rejection of mechanical formulas that supposedly make the constitutional minimum-contacts analysis "easier" to apply. *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (rejecting a "'sliding scale approach'" adopted by California Supreme Court as "difficult to square with our precedents"); *accord Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759 (7th Cir. 2010); *Boschetto*, 539 F.3d at 1019.

This Court may take judicial notice that, since *Zippo* was decided back in 1997, ecommerce and its modes for interactivity have grown and changed exponentially. *Cf. Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 579 (6th Cir. 2012) (taking judicial notice of matters of common knowledge). As some courts have said, "the distinctions

41

between 'passive' and 'interactive' proffered in *Zippo* as a basis to determine jurisdiction are unhelpful, or even meaningless." *See* James P. Donohue, 1 INTERNET LAW & PRAC. § 9:14 (Nov. 2019). Although *Walden* did not address the "very different questions" posed by virtual jurisdictional presence, 571 U.S. at 290 n.9, *Walden* and *Bristol-Myers Squibb* suggest that something more than internet sales to the forum State—such as some other specific targeting of the forum itself—should be required. *Cf. Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711, 715 (N.D. Ill. 2011) ("Internet sales, without something more, are not enough.").

Even if ThermoLife had shown some sales of adulterated supplements via an interactive website to individuals who happen to reside in Arizona, to find specific personal jurisdiction the Court should still require more specific targeting of Arizona. NetNutri's "sales to [Arizona] residents were not specifically directed contacts, but instead occurred only because the purchasers of [www.netnutri.com]'s goods happened to reside in Arizona." *See Bubble Genius LLC v. Smith*, No. CV 15-0066 PA (FFMX), 2015 WL 4399483, at *5 (C.D. Cal. July 17,

2015). *Walden* requires "contacts with the forum State itself, not . . . contacts with persons who reside there." *Walden*, 571 U.S. at 284.

The district court's dismissal was correct, and it did not abuse its discretion in rejecting ThermoLife's motions for reconsideration.

### D. ThermoLife Fails to Make a Prima-Facie Case for General Personal Jurisdiction

ThermoLife appears to appeal only the question of specific personal jurisdiction. But because its brief does not expressly say so, out of caution NetNutri briefly addresses general personal jurisdiction. To establish general personal jurisdiction, ThermoLife must accomplish the exacting task of showing that NetNutri is effectively "at home" in Arizona. *See Bristol-Myers Squibb*, 137 S. Ct. at 1780; *Schwarzenegger*, 374 F.3d at 801. For all the reasons stated above in relation to specific personal jurisdiction, ThermoLife has not made that showing.

That conclusion is unaffected by the fact that, between 2014 and 2018, less than 2% of NetNutri's gross revenue came from sales to persons in Arizona. 2 ER 107 ¶ 8. Merely "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284

43

F.3d 1114, 1125 (9th Cir. 2002); *accord Rosen v. Universal Autograph Collectors Club, Inc.*, No. CV 07-3515, 2008 WL 11338013, at *3 (C.D. Cal. Jan. 8, 2008) ("Courts have regularly held that even 10–15% of a defendant's sales in the chosen forum does not create general jurisdiction."). The Court should affirm. *See* 1 ER 8–9.

## III. Even if NetNutri Were Subject to Personal Jurisdiction, the Court Should Affirm Because ThermoLife Fails to State a Claim for Relief

Even if the Court were to find personal jurisdiction, it still should affirm because ThermoLife has failed to state a claim. Although the district court declined to address that issue (as unnecessary), it was fully briefed below. *See* 2 ER 44–47, 61–70, 94–102. And this Court may affirm the district court's dismissal on any ground supported by the record. "If the decision below is correct, *it must be affirmed*, even if the district court relied on the wrong grounds or the wrong reasoning." *Polaris Pictures*, 159 F.3d at 418 (emphasis added).

### A. ThermoLife Lacks Article III Standing to Pursue Any of Its Claims

Article III of the United States Constitution limits the power of federal courts to actual "cases" and "controversies," and standing to sue "is an essential and unchanging part of the case or controversy

44

requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This "'irreducible constitutional minimum' of standing" requires that the plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (U.S. 2016) (quoting *Lujan*, 504 U.S. at 560). None of those elements is satisfied by ThermoLife's Complaint.

### 1. ThermoLife Fails to Allege Any Injury in Fact

As NetNutri contended in the district court, 2 ER 94–96, ThermoLife has not sufficiently alleged an actual injury. "To establish an injury in fact, [ThermoLife] must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, *not conjectural or hypothetical*." *Spokeo,* 136 S. Ct. at 1548 (citation omitted) (emphasis added). An injury is "particularized" only if it affects the plaintiff "in a personal and individual way"; and to be "concrete," the injury "must actually exist"— that is, be "real, and not abstract." *Id.* (internal quotation marks and citations omitted).

45

The Complaint's allegations do not show any plausible injury to ThermoLife, much less a concrete and particularized one. ThermoLife licenses and sells patented ingredients for use in food products and dietary supplements made by others. 2 ER 113 ¶¶ 14–18; 2 ER 114 ¶¶ 20–23. Many of its patents pertain to combining amino acids with nitrates to aid athletic performance. 2 ER 113 ¶ 15. Such raw ingredients are sold for use in the "Sports Nutrition" category of dietary supplements, which are bought by consumers "looking to gain muscle and increase performance or improve physical appearance." 2 ER 114 ¶¶ 20, 22–24.

The sole ThermoLife ingredient specifically referenced in the Complaint is ThermoLife's creatine nitrate. 2 ER 113–14 ¶¶ 18, 20, 22–24; *see* 2 ER 87 n.3. "ThermoLife's creatine nitrate is the marquee ingredient in the world's top-selling pre-workout product"—non-party Cellucor's "C4." 2 ER 114 ¶23.

Unlike ThermoLife, which licenses and sells patented raw ingredients for dietary-supplements, NetNutri is an online retailer that advertises and sells over 7,000 products manufactured by third-parties. 2 ER 112 ¶ 9; 2 ER 115 ¶ 27. That includes products "that contain

46

ingredients and technology sourced and/or licensed from ThermoLife" itself. 2 ER 115 ¶ 27; 2 ER 116 ¶ 35. And as alleged in the Complaint, 278 of the products NetNutri advertises and sells "contain drugs and are misbranded when labeled as Dietary Supplements." 2 ER 115 ¶¶ 27–28; *see* 2 ER 121–22 ¶ 53. But the Complaint fails to plausibly allege that NetNutri has caused ThermoLife to suffer competitive harm.

In fact, despite containing 218 paragraphs, the Complaint does not specifically allege any actual injury resulting to *ThermoLife* as a result of NetNutri's online sales of others' products. ThermoLife merely vaguely concludes that NetNutri's online advertisement and sale of allegedly adulterated supplements has caused Thermolife to have "been injured as a result," to have suffered a "competitive injury," and to have "suffered a commercial injury to its reputation or sales." 2 ER 112 ¶¶ 7, 224–25, 232–34. For purposes of Article III, such conclusory allegations do not suffice to plead actual injury.

Other courts have agreed. For example, in *ThermoLife International, LLC v. NeoGenis Labs, LLC*, No. 2:18-cv-2980, 2019 WL 1438293, at * 6 (D. Ariz. Apr. 1, 2019), which also concerns ThermoLife's patented creatine nitrate, the district court dismissed for

47

the lack of standing. As it observed, "[ThermoLife]'s allegations of competitive or commercial injury as to the [defendant's] products are conclusory." *Id*. "[T]o allege a plausible competitive or commercial injury, [ThermoLife] must allege some factual support for its allegations that there are competing products that use [ThermoLife]'s patent licenses and/or that plaintiff is selling an ingredient that is used by other manufacturers who make products that compete with defendant's products." *See id.* "It is not sufficient," as here, for ThermoLife "to just generally allege that such products exist." *See id.*

Similarly, in *ThermoLife International, LLC v. Sparta Nutrition LLC*, No. CV-19-01715, 2020 WL 248164, at *4 (D. Ariz. Jan. 16, 2020), the district court held that "conclusory allegations that [ThermoLife] suffered 'competitive' or 'commercial' injuries by Defendant's conduct" were insufficient to establish standing under Article III. "[T]he Complaint repeatedly states Defendant's 'false statements have caused ThermoLife competitive injury' . . . and that 'Plaintiff has been injured as a result of Defendant's false statements,' . . . but elaborates no

further. These allegations alone insufficiently warrant finding Article III standing." *Id.* at *4 n.5.[9]

Although ThermoLife alleges here that it "is harmed when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from ThermoLife and/or products that are licensed by ThermoLife," 2 ER 114 ¶ 25, that allegation also is both "threadbare" and "conclusory," *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009), as well as "conjectural or hypothetical," *Spokeo*, 136 S. Ct. at 1548. It is thus insufficient to show injury under Article III.

ThermoLife fails to allege *plausibly* that consumers are "misled" by NetNutri to ThermoLife's *actual* detriment. ThermoLife does not allege that it lost sales, revenue, or market share due to NetNutri's advertising or sales. *See generally* 2 ER 109–76. It does not allege that

---

[9] Although the district court in *Sparta Nutrition* ultimately held that ThermoLife had pleaded Article III standing, that ruling was based on other, specific allegations not contained in ThermoLife's Complaint against NetNutri. 2020 WL 248164, at *4–5 (allegations that defendant's conduct caused Thermolife to lose sales it otherwise would have made and that the defendant's conduct had increased ThermoLife's costs and deterred others from commercializing products to ThermoLife's detriment). But the court in *Sparta Nutrition* nonetheless dismissed ThermoLife's complaint for failure to plead a cause of action under the Lanham Act, *id.* at *7–10, as discussed below.

NetNutri's advertising or sale of allegedly adulterated supplements caused ThermoLife to incur any increased costs. *Id.* And it does not allege that any consumer declined to buy a product containing a ThermoLife ingredient in favor of one of the allegedly adulterated supplements sold by NetNutri. *Id.*

Though the Complaint offers conclusory allegations that the products "compete,"[10] ThermoLife alleges no facts that render the conclusion plausible. ThermoLife specifically identifies in the Complaint only one product that contains a ThermoLife ingredient, Cellucor's C4. But ThermoLife fails to allege that any of the allegedly adulterated supplements competes with or draws sales away from C4. To the contrary, ThermoLife alleges that C4 remains the "world's top selling pre-workout product." 2 ER 114 ¶ 23. ThermoLife does not allege that any of the allegedly adulterated supplements is considered by consumers to be an alternative to any product that contains a ThermoLife ingredient. There is thus no plausible basis from which to infer that NetNutri misleads consumers to ThermoLife's detriment.

---

[10] *See, e.g.*, 2 ER 110 ¶ 1; 2 ER 112 ¶ 9; 2 ER 135 ¶ 106; 2 ER 141 ¶ 122; 2 ER 148 ¶ 143; 2 ER 154 ¶ 160; 2 ER 160 ¶ 181; 2 ER 166 ¶ 197; 2 ER 170 ¶ 212.

Finally, even if ThermoLife had plausibly alleged that consumers are misled into buying adulterated supplements instead of products that contain ThermoLife ingredients, the allegation would remain inadequate to allege an Article III injury. This is because it would be entirely conjectural to infer that a purchaser's decision to forego "a product that contains *ingredients sourced from [or licensed by] ThermoLife"* had any appreciable impact on ThermoLife's bottom line.

In other words, even if some third-party manufacturer lost sales due to the allegedly adulterated supplements, no conclusion can be drawn as to what impact, if any, this would have had on *ThermoLife*'s revenue or profitability. Under the Lanham Act, "[l]ost sales for the *plaintiff* because of the defendant's false advertising is the 'paradigmatic direct injury from false advertising.'" *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 644–45 (N.D. Cal. 2019) (citation omitted) (emphasis added). While replete with conclusory allegations that the supplements at issue are "adulterated" or "misbranded," and "unfairly compete" with third-party products that contain a ThermoLife ingredient, the Complaint offers not a single

allegation showing any "concrete" and "particularized" injury to *ThermoLife*.[11]

### 2. Even If ThermoLife Had Alleged an Actual Injury, It Could Not Fairly Be Traced to NetNutri

As argued below, 2 ER 96, even if ThermoLife had alleged an injury, the Complaint allegations do not fairly trace it to NetNutri's conduct. *See Lujan*, 504 U.S. at 560. An injury is not "fairly traceable" to a defendant when, at its core, it is the result of third-party conduct and when it would be a guess to conclude that the defendant caused or affected the third-party's conduct. *See Clinton v. City of New York*, 524 U.S. 417, 460–61 (1998).

ThermoLife does not allege that NetNutri manufactures, designs, formulates, or labels the allegedly adulterated supplements. Nor does ThermoLife allege that NetNutri has any control over those activities or the content of the supplements' labeling. *See* 2 ER 96. To the contrary,

---

[11] ThermoLife also alleges, in conclusory fashion, that NetNutri "has deceived consumers," "created a serious health risk to consumers," "falsely represent[ed] to consumers," and "made false and material misrepresentations to consumers." *See, e.g.*, 2 ER 121 ¶ 52; 2 ER 139 ¶ 111. But alleged harm to the consuming public does not plausibly confer Article III standing on ThermoLife. *See Federal Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998) ("generalized grievances" insufficient to create standing).

the Complaint specifically identifies numerous third-party manufacturers as responsible for those aspects of the allegedly adulterated supplements. *See* 2 ER 129 ¶ 87; 2 ER 135 ¶ 106; 2 ER 141 ¶ 122; 2 ER 148 ¶ 144; 2 ER 154 ¶ 161; 2 ER 160 ¶ 181; 2 ER 166 ¶ 197; 2 ER 170 ¶ 213.

Per a common-sense reading, the Complaint alleges that the formulation and labeling of the adulterated supplements is controlled by those third parties, who are not parties to this action. The Complaint simply alleges that NetNutri uses its website to advertise those supplements and to offer them for sale, alongside nearly 7,000 other products—including products that contain *ThermoLife's* ingredients. *See, e.g.*, 2 ER 115 ¶¶ 27, 29; 2 ER 116 ¶¶ 31–35. It would be unreasonable to infer that NetNutri has any power over third-parties' decisions with respect to the formulation, labeling, or advertising of the Products.

Nor does the Complaint allege that NetNutri's inability to sell the adulterated supplements would make any difference, for the third-party manufacturers would not necessarily be precluded from continuing to sell them through other avenues. Tracing to NetNutri injury

attributable to third-party conduct as alleged here cannot support Article III standing. *See Clinton*, 524 U.S. at 460–61.

### 3. Even if ThermoLife Had Alleged Actual Injury, It Could Not Be Redressed by a Favorable Judicial Decision

Even if ThermoLife had alleged an actionable injury traceable to NetNutri, a judicial decision in ThermoLife's favor could not redress that injury.

As argued below, 2 ER 96–97, the gravamen of ThermoLife's Complaint is that the allegedly adulterated supplements are "illegal, unsafe, and forbidden," 2 ER 121–22 ¶¶ 52–53, and therefore "should never have been in the marketplace," 2 ER 139 ¶ 112.[12] ThermoLife seeks as its remedy against NetNutri damages, disgorgement of profits, and an injunction, preventing NetNutri from displaying the Products' false advertising on its website. 2 ER 175–76.

But even if granted, such relief could not take the adulterated supplements off the market or prevent their manufacturers from continuing to make and sell them in their allegedly "adulterated" or "misbranded" condition. ThermoLife does not allege that the

---

[12] *See also* 2 ER 144 ¶ 128; 2 ER 156 ¶ 166; 2 ER 162 ¶ 186; 2 ER 167 ¶ 202 (claiming they "should never have been in the marketplace").

54

manufacturers sell exclusively via www.netnutri.com. ThermoLife does not allege that NetNutri controls the manufacture or labeling of the adulterated supplements. And any allegation of active concert or conspiracy in the Complaint is wholly speculative and lacking in supporting specific allegations. *See* 2 ER 174–76.

Accordingly, even if ThermoLife had alleged an actionable injury, a favorable judicial decision against NetNutri would be incapable of redressing it. That is fatal to Article III standing and warrants affirming of the district court's dismissal of ThermoLife's claims.

## B. Even if ThermoLife Alleged an Injury Sufficient to Support Article III Standing, It Does Not State a Claim Under the Lanham Act

As argued below, 2 ER 97–100, to state a claim under the Lanham Act, ThermoLife must allege, but fails to allege, that it (1) falls within the "zone of interests" protected by the Lanham Act and that it (2) sustained injuries—which it has not alleged (see above)—as a proximate result of NetNutri's alleged misconduct. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–34 (2014). Thus, even if ThermoLife had Article III standing, it has no cause of action under the Lanham Act, 15 U.S.C. § 1125(a). On this basis, the

Court should affirm the district court's dismissal of the Lanham Act claim.

**1.** ***ThermoLife's Claims Are Not within the "Zone of Interests" Protected by the Lanham Act***

The congressional purpose behind the Lanham Act's prohibition against false advertising is to protect persons engaged in commerce against unfair competition. *Lexmark*, 572 U.S. at 131–32 (citing 15 U.S.C. § 1127). To state such a claim based on false advertising, ThermoLife "must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by [NetNutri]'s misrepresentations." *See id.* at 140.

And to come within "the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* That confines the reach of the Lanham Act to boundaries far narrower than the scope of Article III. *Id.* at 129. Though a plaintiff "may well have an injury-in-fact cognizable under Article III, . . . he cannot [necessarily] invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question." *Id.* at 132 (collecting cases).

ThermoLife fails to allege any injury to its commercial interests that is actionable under the Lanham Act. In the Complaint's first paragraph, ThermoLife labels NetNutri "its competitor." 2 ER 110 ¶ 1. But such a conclusory allegation is insufficient to show that the two entities in fact compete. The Complaint's remaining allegations demonstrate that they do not.[13]

ThermoLife alleges that it licenses and sells raw ingredients for use in dietary supplements while NetNutri is an online retailer of finished dietary supplements manufactured by others. 2 ER 114 ¶¶ 20–21.[14] Per the Complaint, NetNutri does not license or sell dietary ingredients. ThermoLife alleges that NetNutri advertises for sale over 7,000 products, 278 of which are "adulterated" or "misbranded" and, therefore, falsely advertised. 2 ER 121 ¶ 53. But from those allegations, Thermolife makes an impermissible and unsupported logical leap, merely conjecturing that "[it] is harmed when consumers are misled

---

[13] Equally conclusory are other merely formulaic allegations that NetNutri sells products manufactured by third-parties that directly compete with products containing ingredients sourced from ThermoLife. *See, e.g.*, 2 ER 135 ¶ 106; 2 ER 141 ¶ 122.

[14] *See also* 2 ER 129 ¶ 87; 2 ER 135 ¶ 106; 2 ER 141 ¶ 122; 2 ER 148 ¶ 144; 2 ER 154 ¶ 161; 2 ER 160 ¶ 181; 2 ER 166 ¶ 197; 2 ER 170 ¶ 213 (identifying third-party manufacturers).

into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from ThermoLife." 2 ER 114 ¶ 25.

First, ThermoLife does not allege any facts plausibly showing that consumers are misled into buying an adulterated supplement instead of a product containing a ThermoLife ingredient. Indeed, ThermoLife does not plausibly allege that the adulterated products compete with or, in the minds of consumers, are alternatives to any product that contains a ThermoLife ingredient.[15] It thus is entirely guesswork to suggest that false advertising of an adulterated supplement lures sales away from other products that contain a ThermoLife ingredient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (well-pleaded factual allegations must move the claim "across the line from conceivable to plausible").

Second, even if ThermoLife had plausibly alleged lost sales of third-party products, it does not specifically allege that any consumer's decision to forego the third-party product was based on the alleged false advertising of an adulterated supplement. ThermoLife specifically

---

[15] As stated above, conclusory allegations that the adulterated supplements "directly compete" with products containing a ThermoLife ingredient are not enough. *See supra*.

58

identifies only a single third-party product containing a ThermoLife ingredient, Cellucor's C4, which, per the Complaint, remains the "world's top selling pre-workout product." 2 ER 23.

But even if ThermoLife had alleged lost sales of C4, which it does not, it does not compare C4 to any of the allegedly adulterated products or allege any facts to plausibly show that false advertising lured consumers away from it. ThermoLife's lone, conclusory allegation that false advertising misled consumers into buying the adulterated supplements does not change this result. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Finally, even if the Complaint plausibly alleged a decrease in sales of products containing ThermoLife's ingredients attributable to the false advertising of the adulterated supplements, which it does not, the Complaint does not allege that any decrease in finished-product sales

has affected ThermoLife's bottom line.[16] ThermoLife does not allege any decrease in its own sales or market share, any increased promotional or other costs, or any other concrete measure of injury to *it* due to any decrease in the sales of finished products containing one of its ingredients.

In sum, ThermoLife's single, threadbare allegation of injury—i.e., that "[it] is harmed when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from ThermoLife," 2 ER 114 ¶ 25—is entirely too speculative to state a claim for relief. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Having alleged no plausible injury to its commercial interests, ThermoLife has failed to show that its claims are within the "zone of interests" protected by the Lanham Act. The district court's dismissal of ThermoLife's Lanham Act claim should be affirmed.

---

[16] Indeed, as noted above, the only product ThermoLife specifically identifies as containing one of its ingredients is third-party Cellucor's C4, "the world's *top-selling* pre-workout product." 2 ER 114 ¶ 23 (emphasis added). Far from suggesting a decrease in sales, the Complaint allegations suggest that products containing ThermoLife's ingredients are doing well.

### 2. ThermoLife Has Failed to Allege Any Injury Proximately Caused by NetNutri's Conduct

In addition to alleging a commercial injury within the "zone of interests" protected by the Lanham Act, a plaintiff must allege that its injury proximately resulted from the defendant's alleged misconduct. *Lexmark*, 572 U.S. at 132–33. ThermoLife has failed to do so.

The proximate-cause requirement "bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct," which is "ordinarily the case if the harm is *purely derivative* of misfortunes visited upon a third person by the defendant's acts." *Id.* at 133 (internal quotation marks and citations omitted) (emphasis added). In *Lexmark*, the Supreme Court thus held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputation injury *flowing directly* from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133 (emphasis added). This showing is made when deception causes consumers to withhold trade from the plaintiff. *Id.*

Conversely, the required showing of proximate cause "is generally not made when the deception produces injuries to a fellow commercial actor that *in turn affect the Plaintiff*." *Id.* 133–34 (emphasis added). For example, "while a competitor forced out of business by a defendant's

false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties *who merely suffer as a result . . . .*" *Id.* at 134 (internal quotation marks and citations omitted) (emphasis added).

The harm alleged by ThermoLife—threadbare and conclusory as it is—also derives entirely from alleged harm to third-party manufacturers whose unadulterated finished-product supplements incorporate ThermoLife's raw materials. It is they, not ThermoLife, who are harmed when consumers allegedly are misled into buying adulterated supplements.

ThermoLife does not allege that lost sales by any of those third-parties has affected ThermoLife's bottom line. Instead, ThermoLife merely hopes the Court will infer that third parties' conjectural lost sales results in lower demand for ThermoLife's ingredients, thus hurting ThermoLife's bottom line through lower sales of raw materials. *See, e.g.*, *Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (holding that allegation of harm due to defendant's alleged false advertising was insufficient to plead proximate

causation to support a Lanham Act claim where plaintiff failed to make any specific allegation of lost sales or reputational damage).

No alleged facts in the Complaint support such an inference, and such harm is in any event too remote to satisfy proximate cause. *See Lexmark*, 572 at 133 ("The question [proximate cause] presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits."). ThermoLife thus occupies the same posture as the landlord, electric company, and other remote parties adversely affected by the harm inflicted on the competitor discussed in *Lexmark*'s hypothetical. *Id.* at 134.

At best, the Complaint alleges that NetNutri's alleged false advertising lures consumers away from buying third-party finished products that incorporate ThermoLife's raw ingredients, thus causing the third-parties to suffer lower sales of those products and, presumably, resulting in decreased demand for ThermoLife's ingredients. But such remote harm—which is not even alleged or *reasonably* inferred from the Complaint—would not establish proximate cause. Under *Lexmark*, there is no showing of proximate cause when

alleged deception merely "produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Lexmark, 572* at 133–34.

"If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed." *See id.* at 134 n.6. Because ThermoLife fails to allege proximate cause, the Court should affirm the district court's dismissal.

## C. ThermoLife's Failure to State a Lanham Act Claim Negates its Common-Law Claims

In addition to its Lanham Act claim, ThermoLife raised claims against NetNutri for common-law unfair competition and civil conspiracy. 2 ER 174–175.

First, in "the Ninth Circuit, claims of unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (quoting *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994)). Because ThermoLife fails to state a Lanham Act claim, its common-law claim for unfair competition likewise fails. *See, e.g.*, *Sparta Nutrition*, 2020 WL 248164 at *10 (dismissing common-law unfair competition claim after dismissing Lanham Act false-advertising claim).

Second, ThermoLife's vague conspiracy claim likewise fails because ThermoLife fails to state a claim for any underlying tort. *See Hillis v. Heineman*, 2009 WL 2222709, at *3 (D. Ariz. July 23, 2009) (civil-conspiracy claims "require[] an underlying tort which the alleged conspirators agreed to commit") (quoting *Baker v. Stewart Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 259 (Ariz. Ct. App. 2000). Moreover, the civil-conspiracy claim should be dismissed because it lacks any cognizable substance as to concert and overt action. *See* 2 ER 174–75.

For these reasons also, the district court's judgment of dismissal of the unfair-competition and conspiracy claims should be affirmed.

## D. The Complaint Fails to Satisfy Federal Rule of Civil Procedure 9(b)

As argued to the district court, 2 ER 100–02, in alleging fraud ThermoLife "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That is required for false-advertising claims under the Lanham Act (and derivative unfair-competition and conspiracy claims) that are "'grounded in' or 'sound in,'" fraud, as alleged here. *See Bobbleheads.com*, 259 F. Supp. 3d at 1095; *cf. Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (Rule 9(b) applies to all claims grounded in fraud). ThermoLife had to

"'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (citation omitted). ThermoLife's false-advertising and unfair-competition claims and dependent conspiracy claim fail to meet that standard and so should be dismissed on that ground.

Although ThermoLife repeatedly alleges that NetNutri sold adulterated supplements by making false representations about their ingredients, *see, e.g.,* 2 ER 110–12 ¶¶ 1, 3, 7; 2 ER 131 ¶ 89; 2 ER 138 ¶ 109, ThermoLife does not identify the specific representations on which it relies, the time the representations were made, or the specific location of those representations on NetNutri's website. Instead, ThermoLife merely attached as Exhibit C to its Complaint pages of webpage screenshots and asked the district court to figure it out. *See* 2 ER 129 ¶ 87 n.15. (On appeal, ThermoLife never references that exhibit and does not include it in its Excerpts of Record, and thus has forfeited the right to rely on it—though it could not help.)

Similarly, the Complaint offers *no* specifics concerning NetNutri's alleged conspiracy with others to falsely label supplements that

66

NetNutri does not manufacture but merely retails. That comes nowhere close to meeting Rule 9(b)'s particularity requirement.

## CONCLUSION

The Court should affirm the dismissal below because ThermoLife has failed to make a prima-facie case for personal jurisdiction over NetNutri. The Court should alternatively affirm the dismissal based on other grounds supported by the record though not relied on by the district court: ThermoLife fails to state a claim and fails to meet the particularity requirement of Rule 9(b).

Dated: January 30, 2020

Respectfully Submitted,

 s/ Robert F. Parsley

Robert F. Parsley
Michael J. Dumitru
Meredith C. Lee
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Telephone: (423) 756-6600
bob.parsley@millermartin.com
michael.dumitru@millermartin.com
meredith.lee@millermartin.com

Anthony J. Hancock
BEAUGUREAU, HANCOCK, STOLL &
SCHWARTZ, P.C.
302 E. Coronado Rd.
Phoenix, AZ 85004
Telephone: (602) 977-7742
ahancock@bhsslaw.com

*Counsel for Defendant–Appellee
NetNutri.com LLC*

## STATEMENT OF RELATED CASES

Under 9th Cir. R. 28-2.6, Defendant–Appellee NetNutri.com LLC states that it is unaware of any related cases pending in this Court.

s/ Robert F. Parsley
MILLER & MARTIN PLLC

*Counsel for Defendant–Appellee*
*NetNutri.com LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

## 9th Cir. Case Number(s) <u>19-16710</u>

I am the attorney or self-represented party.

**This brief contains <u>13,174</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Robert F. Parsley</u>  **Date** <u>January 30, 2020</u>

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** <u>19-16710</u>

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

Response Brief of Appellee NetNutri.com LLC

**Signature** <u>s/ Robert F. Parsley</u> **Date** <u>January 30, 2020</u>